# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

DELBERT McNEIL, JR.,          )
                    Plaintiff,    )
v.                           )          Case No. CIV-05-429-F
                             )
JOHN CLAY ANDERSON,          )
                    Defendant.   )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

In this action, Plaintiff, Delbert McNeil, Jr., brings a claim pursuant to 42 U.S.C. § 1983 alleging that Defendant, John Clay Anderson, violated his Fourth Amendment rights by using excessive force to arrest him. Defendant Anderson has filed a motion for summary judgment [Doc. #42] asserting qualified immunity as a defense, and Plaintiff has responded to the motion [Doc. #46]. The matter is now at issue. For the reasons set forth below, it is recommended that Defendant's Motion be granted and that judgment as a matter of law be entered in his favor.

## I.      Factual Record

On June 7, 2002, Defendant Anderson, an Oklahoma Highway Patrolman, encountered Plaintiff during a traffic stop in Norman, Oklahoma. During the course of that traffic stop, Defendant Anderson suffered chemical exposure after a substance came spewing out from Plaintiff's vehicle. Defendant Anderson suffered temporary burning of his eyes, nose and mouth. He received emergency room treatment for the chemical exposure. The chemicals were believed to be used for manufacturing methamphetamine. *See* Defendant's Motion, Exhibit 1, Affidavit of Defendant, John Clay Anderson; *see also* Defendant's

Motion, Exhibit 6, medical records, Norman Regional Hospital. As a result of this traffic stop, Plaintiff was charged with Attempt to Manufacture Methamphetamine, but the charges were later dismissed. *See* Defendant's Motion, Exhibit 3, Transcript of Jury Trial at 219-220.

Nearly one year later, on June 2, 2003, at approximately 11:20 p.m. in the evening, Defendant Anderson, while on duty, observed a vehicle traveling on the interstate at a high rate of speed. Defendant Anderson activated his radar and clocked the vehicle traveling at 90 miles per hour. The posted speed limit was 70 miles per hour. Defendant Anderson then paced the speeding vehicle and further observed the vehicle traveling erratically and swerving in its lane. Defendant Anderson activated his emergency lights and proceeded to pull the vehicle over. *See* Defendant's Motion, Exhibit 1, Affidavit of John Clay Anderson ("Anderson Affidavit"), ¶¶ 8-10; Exhibit 2, Jury Trial Transcript at 158; Exhibit 3, Transcript of Jury Trial at 105-107; Exhibit 4, Transcript of Proceedings at 5-6.

As Defendant Anderson approached the vehicle, a pickup truck, he observed a gas can with a hose attached to it in the bed of the truck. Defendant Anderson believed these items to be associated with the manufacture of methamphetamine. As he approached the driver's side of the vehicle, he recognized the driver, Plaintiff, as an individual he had previously encountered. *See* Defendant's Motion, Exhibit 2, Jury Trial Transcript at 161-163; Exhibit 3, Transcript of Jury Trial at 107-108; Exhibit 4, Transcript of Proceedings at 7.

Defendant Anderson ordered Plaintiff to exit his vehicle. Defendant Anderson had knowledge that Plaintiff had previously been arrested more than once on charges of

assaulting a police officer and believed Plaintiff to be dangerous.[1]  Defendant Anderson

ordered Plaintiff away from the side of the interstate and told him to move to the bar ditch

alongside the highway.  *See* Defendant's Motion, Exhibit 2, Jury Trial Transcript at 163-164;

Exhibit 3, Transcript of Jury Trial at 110-111; Exhibit 4, Transcript of Proceedings at 6-7.

A camera mounted on the dashboard of Defendant Anderson's patrol car was

activated at the time of the stop, and a video-recording of the stop and subsequent arrest was

made.  *See* Defendant's Motion, Exhibit 1, Anderson Affidavit, ¶¶ 3, 12-13.  Defendant

Anderson has submitted a DVD of the recording as part of the evidence offered in support

of his motion for summary judgment.  *See* Defendant's Motion, Exhibit 5.  The events

occurring in the bar ditch were outside the range of the camera's view though audio

recording of these events is present.

The crux of Plaintiff's claim turns on the approximately two-minute encounter

between Plaintiff and Defendant Anderson while they were in the bar ditch.  The audio

depicts Defendant Anderson using a loud and excited voice and repeatedly commanding

Plaintiff to put his hands behind his head.  It appears Plaintiff initially attempted to lay down

because Defendant Anderson commands Plaintiff to stand up and put his hands behind his

head.  Plaintiff is heard stating he is getting a cell phone and Defendant Anderson responds

that if Plaintiff pulls out anything  but a phone, Defendant Anderson will kill Plaintiff.

---

[1]During a deposition of Plaintiff taken on August 22, 2006, Plaintiff testified that he "busted" an Arizona police officer's nose and was arrested for assaulting the chief of police in Wynnewood, Oklahoma.  *See* Defendant's Motion, Exhibit 7, Deposition of Delbert McNeil, Jr. (McNeil Deposition) at 24-28,

Defendant Anderson continues to shout instructions to Plaintiff as he observes Plaintiff dropping something to the ground.  Defendant Anderson then tells Plaintiff to go down on one knee, then to lay down and put both hands behind his back.  Plaintiff is twice heard saying "I am," in response to Defendant Anderson's commands to put his hands behind his head.  Defendant Anderson then gives increasingly forceful commands for Plaintiff to put his hands behind his head.  The video then depicts Plaintiff running to the front of his pickup truck.

The parties' accounts of the events occurring in the ditch during this two-minute interval differ significantly.  Plaintiff claims he lay face down in the ditch and Defendant Anderson came down on Plaintiff's back, kneeing Plaintiff in the lower spine.  Plaintiff also claims Defendant Anderson put a gun to Plaintiff's hand to stage an attack by Plaintiff, used racial epithets and threatened to kill Plaintiff.  Plaintiff contends Defendant Anderson called an ambulance to the scene as part of his plan to stage the attack and complete the murder.  Plaintiff claims that, fearful for his life, he summoned the strength to throw Defendant Anderson from his back at which time Plaintiff ran to the front of his truck.  *See* Complaint at 2; *see also* Defendant's Motion, Exhibit 7, McNeil Deposition at 70-72.

In his response to Defendant's Motion, Plaintiff further claims that after he complied with Defendant Anderson's commands to return to the bar ditch and lay down and after the additional officers had arrived on the scene, Defendant Anderson "kicked plaintiff in the ass and put his foot on the plaintiff [sic] neck and head with the barrel of the shot gun resting on the plaintiffs [sic] head . . . ."  *See* Plaintiff's Response at 4-5.  *See also* Defendant's Motion,

4

Exhibit 7, McNeil Deposition at 74, 101-102.  According to Plaintiff, this lasted for 10 to 15 seconds.  *See id.* at 102.

Conversely, Defendant Anderson claims once Plaintiff was in the bar ditch, Plaintiff initially complied with Anderson's orders and put his hands behind his head.  Plaintiff then paused, turned away from Anderson and put his hands in his pants.  Defendant Anderson believed Plaintiff was attempting to retrieve a weapon and tried to grab Plaintiff's hand to prevent him from pulling a weapon.  At the same time, Defendant Anderson tried to put Plaintiff's other hand behind his back.  He then holstered his weapon while attempting to handcuff Plaintiff.  Plaintiff continued to struggle, and Plaintiff and Defendant wrestled to the ground.  Plaintiff then shoved Defendant Anderson off of him and ran to the front of his truck.  *See* Defendant's Motion, Exhibit 2, Jury Trial Transcript at 163-168; Exhibit 3, Transcript of Jury Trial at 110-112; Exhibit 4, Transcript of Proceedings at 7-8.

After Plaintiff ran to the front of his truck,  Defendant Anderson retreated to his patrol car, retrieved a shotgun and called for backup.  Defendant Anderson testified that he believed Plaintiff had a gun and that a gunfight was imminent.  *See* Defendant's Motion, Exhibit 2, Transcript of Jury Trial at 168-170; Exhibit 3, Transcript of Jury Trial at 112-113; Exhibit 4, Transcript of Proceedings at 9-10.

Defendant Anderson again ordered Plaintiff to lay down in the ditch.  Plaintiff complied at this point.  Defendant Anderson did not handcuff Plaintiff, but waited for backup officers to arrive.  Once the backup officers arrived, Plaintiff was handcuffed and taken to the McClain County Jail by one of the officers other than Defendant Anderson.

5

*See* Defendant's Motion, Exhibit 2, Transcript of Jury Trial at 171-172; Exhibit 3, Transcript of Jury Trial at 114; Exhibit 4, Transcript of Proceedings at 10.[2]

Plaintiff did not ask for or receive immediate medical treatment as a result of his struggle with Defendant Anderson. *See* McNeil Deposition [Doc. #42, Exhibit 7] at 89-90. Upon a search of Plaintiff's truck and the surrounding scene, Defendant Anderson found in front of Plaintiff's truck a bag of methamphetamine that had been emptied out. *See* Defendant's Motion, Exhibit 4, Transcript of Proceedings at 10.

As a result of the June 2, 2003, traffic stop, Plaintiff was charged with Possession of a Controlled Dangerous Substance (Methamphetamine), Resisting an Officer, Possession of Paraphernalia, Speeding and Littering.  Following a jury trial, Plaintiff was convicted of Possession of a Controlled Dangerous Substance, Resisting an Officer and Speeding.  *See* Defendant's Motion, Exhibit 8, Judgment and Sentence. The Oklahoma Court of Criminal Appeals (OCCA) reversed the conviction and remanded for a new trial as to the Counts of Possession of a Controlled Dangerous Substance and Resisting an Officer.  *See* Defendant's Motion, Exhibit 13.  Upon retrial, the jury found Plaintiff guilty of Resisting an Officer. *See* Defendant's Motion, Exhibit 14.[3]

---

[2]Defendant Anderson offers the opinion of Tim Tipton, employed as an Oklahoma Highway Patrol State Trooper, in further support of his motion for summary judgment.  *See* Defendant's Motion, Exhibit 16.  The Court has reviewed that opinion statement but not relied upon it.  The opinion of Trooper Tipton is not dispositive of Plaintiff's claim.

[3]The OCCA subsequently affirmed Plaintiff's conviction for resisting an officer. *See McNeil v. State of Oklahoma*, No. M-2005-970, summary opinion filed October 10, 2006, available at: http://www.oscn.net/applications/oscn/getcaseinformation.asp?submitted=true&number=2005-0970&db=Appellate&viewtype=oscn.

## II.      Standard on Motion for Summary Judgment

A motion for summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  An issue of material fact is genuine only if a party presents facts sufficient to show that a reasonable jury could find in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The existence of a factual issue does not preclude summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side.  *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).  In opposing a motion for summary judgment, the non-moving party must come forward with enough evidence  to support a jury verdict.  Conclusory allegations will not suffice.  *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

## III.     Analysis

Where, as here, qualified immunity is raised as a defense to an excessive force claim, the court must consider as a threshold issue whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A claim of excessive force arising in the context of an arrest or investigatory stop "is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the

right to be secure in their persons . . . against unreasonable . . . seizures of the person."
*Graham v. Connor*, 490 U.S. 386, 394 (1989).

A reasonableness standard governs a claim that a police officer has used excessive force in violation of an individual's Fourth Amendment rights. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (quotation omitted).  The reasonableness standard balances the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  *Id*. at 396.

The reasonableness inquiry "is not capable of precise definition or mechanical application" and requires careful attention to the facts and circumstances of each particular case.  *Graham*, 490 U.S. at 396 (quotation omitted).  The following factors govern the inquiry: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Id*. at 396.  Moreover, the reasonableness of an officer's use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  In conducting the analysis, the court must be mindful that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  *Id*. at 397.

The reasonableness inquiry in an excessive force case is an objective inquiry that does not take into account an officer's underlying intent or motivation.  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use

of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *Graham*, 490 U.S. at 397.

With these standards in mind and applying the *Graham* factors, the record establishes as a matter of law that Defendant Anderson did not use excessive force during his encounter with Plaintiff. When Defendant Anderson approached Plaintiff's pickup truck, he observed items in the bed of the truck he associated with the manufacture of methamphetamine. And, upon recognizing Plaintiff, he remembered his previous encounter where he suffered chemical exposure to materials he believed to be used with the manufacture of methamphetamine. Thus, the suspected crime was of sufficient severity to justify Defendant Anderson's request for Plaintiff to exit his vehicle.

In addition to his prior experience with Plaintiff, Defendant Anderson had knowledge of Plaintiff's prior assaults on police officers. Defendant Anderson repeatedly commanded Plaintiff to put his hands behind his head and Plaintiff failed to comply. Instead, Plaintiff resisted these commands and proceeded to retrieve a cell phone (and possibly other contraband) from his person. It was, therefore, objectively reasonable for Defendant Anderson to believe Plaintiff posed an immediate threat to his safety.

Finally, Plaintiff actively resisted arrest.[4] He failed to heed Defendant Anderson's repeated commands to put his hands behind his head. When Defendant Anderson attempted

---

[4]As set forth above, Plaintiff was convicted of Resisting an Officer, and his conviction was ultimately affirmed on appeal. Oklahoma law defines the crime of Resisting an Officer as: "knowingly resist[ing], by the use of force or violence, an executive officer in the performance of his duty . . . ." Okla. Stat. tit. 21, § 268.

to handcuff Plaintiff, he shoved Defendant Anderson from his back and fled to the front of his pickup truck.

Construing the evidence in the light most favorable to Plaintiff for purposes of summary judgment, Plaintiff claims Defendant Anderson pointed his weapon at Plaintiff, threatened to kill him, wrestled with him on the ground, kneed him in the back and kicked him in the buttocks.[5] Given the totality of circumstances, these actions do not give rise to a Fourth Amendment violation for the use of excessive force. *Compare Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001) (viewing evidence in light most favorable to plaintiff, allegation that officer kicked plaintiff's foot "very hard" resulting in bone spur injury -- though plaintiff was not resisting arrest -- failed to establish that officer's actions constituted excessive force); *Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 781-782 (10th Cir. 1993) (granting summary judgment to defendants on plaintiff's claim of excessive force where plaintiff resisted arrest requiring defendants to wrestle with plaintiff and use stun gun to subdue him); *Sanders v. Thomas*, 167 Fed. Appx. 723 (10th Cir. 2006) (unpublished op.) (dismissing excessive force claim alleging officers hit and kicked plaintiff where officers' actions were in response to plaintiff steering his vehicle into oncoming traffic and once stopping vehicle, attempting to flee on foot). During his deposition, Plaintiff admitted that Defendant Anderson never hit him. *See* Defendant's Motion, Exhibit 7, McNeil Deposition

---

[5]As noted, Plaintiff did not request or receive immediate medical attention. Plaintiff alleges he received treatment for his back while incarcerated, but has not produced any evidence to support this allegation. Moreover, the record establishes Plaintiff has since participated in prison rodeo activities, including bull riding and a bucking horse competition. *See* Defendant's Motion, Exhibit 7, McNeil Deposition at 34-37.

at 100.  Moreover, Plaintiff's allegation that Defendant Anderson had a motive and intent to kill Plaintiff, without more, does not establish the use of excessive force.  As stated, an officer's underlying motives or intent are not relevant in conducting the analysis to determine whether the officer's actions were objectively reasonable.

The Court also finds the evidence does not support Plaintiff's allegations that Defendant Anderson used racial epithets.  The Court's own review of the audio portion of the video-recording does not disclose any use of racial epithets by Defendant Anderson, a conclusion supported by the expert opinion of Eric Cannaday.  *See* Defendant's Motion, Exhibit 15, Affidavit of Eric Cannaday, ¶¶ 13-15.[6]

Moreover, Plaintiff has given varied accounts of the events, and inconsistencies exist among Plaintiff's accounts as well as when compared to the information contained on the DVD.  During Plaintiff's deposition, he admitted that certain allegations contained in the Complaint were untrue.  *See* Defendant's Motion, Exhibit 7, McNeil Deposition at 110-115.[7]

For all these reasons, Plaintiff has failed to meet his burden of establishing that a genuine issue of material fact exists as to his claim of excessive force against Defendant

---

[6]Even if Defendant Anderson did use racial epithets, the use of abusive language is only part of the totality of the circumstances to be considered.  As the Tenth Circuit has observed: "[w]hile it seems unlikely that harsh language alone would render a search or seizure unreasonable, verbal abuse may be sufficient to tip the scales in a close case."  *Holland v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001).  The record presented here does not establish a "close case" where harsh language may "tip the scales."

[7]For example, in the Complaint, Plaintiff alleges that: "The defendant threatened to kill the plaintiff on numerous occasions on this day and many times before."  *See* Complaint at 2.  During his deposition, however, Plaintiff admitted that the statement was "not correct" and that the only alleged threat occurred during the course of the arrest which serves as the basis for Plaintiff's excessive force claim.

Anderson.  Under the totality of circumstances, Defendant Anderson's actions during his encounter with Plaintiff on the night of June 2, 2003, were objectively reasonable and did not violate Plaintiff's Fourth Amendment rights.  Consequently, Defendant Anderson is entitled to qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## RECOMMENDATION

It is recommended that Defendant's Motion for Summary Judgment and Brief in Support [Doc. # 42] be granted pursuant to Fed. R. Civ. P. 56 and that judgment as a matter of law be entered in favor of Defendant.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by May __17th__, 2007.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __27th__ day of April, 2007.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE